ANDERSON v. MONROE et al.

(Circuit Court, W. D. Pennsylvania. April 5, 1893.)

No. 41.

PATENTS FOR INVENTIONS—ABANDONMENT—MANTELS.

In a suit for the infringement of design patent No. 19,877, issued June 3, 1890, to W. Anderson, for a design for mantels, the defense was public sale and use more than two years before the patent was applied for. It was shown that one witness had received articles embodying the patented device from the patentee at such time, and the order, receipt, and accounts of the parties showed that the transaction was a simple sale. Complainant and his traveling salesman testified that the articles were only shipped to the witness as samples, and the sale was not consummated until afterwards, and within the two years. *Held* that, as four years had elapsed since the transaction took place, the written evidence is more satisfactory than the verbal testimony, and the defense is sustained.

In Equity. Suit by W. Anderson against W. T. Monroe and Edward T. Germain for infringement of a patent. Bill dismissed.

W. L. Pierce, for complainant.
W. Bakewell & Sons, for respondent.

BUFFINGTON, District Judge. This bill is filed by William Anderson against W. T. Monroe and Edward T. Germain, alleging infringement of design patent for mantels, No. 19,877, applied for by Anderson, 17th March, 1890, and granted June 3 following. The design in controversy is known as the "Anderson CC Mantel." On application the bill was dismissed as to Germain, it being shown this court had no jurisdiction as to him. Several defenses were set up. The one material one, however, to be here considered, is that of public sale, use, and exposure to sale, of the designed device, more than two years prior to the application. The proofs show that, early in the spring of 1888, Anderson had been perfecting several mantel designs at his planing mill at Hulton, Pa. Price was a traveling salesman, selling grate fronts; and it was arranged between them that Price should take orders for Anderson's mantels, on commission, in connection with his regular business. Price visited the mill, consulted about designs, and, when they were determined upon, began taking orders. On March 17, 1888, he went to Washington, Pa., and took an order from McElroy & Moninger, contractors, for four Anderson mantels. This order he noted in his memorandum book as follows: "Shipped McElroy & Moninger, Washington, 1 A, 1 B, 1 C, and 1 D mantel, at $2.25, $2.75, $3.25, and $3.75; total, $12.00." Price testifies these mantels were ordered as samples, on approval, and McElroy & Moninger were under no obligations to keep them. McElroy says they were ordered as samples, "as what we might expect to get in the future from Anderson."

Price says he sent the order to Anderson. He shipped the mantels within a few days,—just when is not shown; but under date of March 15th, more than two years prior to the date of the application, Anderson rendered a bill for them to the purchasers, charging them, inter alia, with one CC mantel, the design patent in this case. Whether he was informed by Price of the alleged conditional nature of the sale does not appear. Price does not testify to that effect. It would seem that some communication must have passed between them, from the fact that Anderson paid the freight, or allowed credit for it in the bill, as far as Pittsburgh; but, in the absence of proof of the terms of such communication, we are justified in regarding it as not containing such information. It is true Anderson testifies, in explanation of the bill, "Price ordered these mantels to be sent there for approval, and directed me to send an invoice along, so as he would know what to do about the price of them;" but in view of the fact that Price had visited the mill, and they had already agreed on the prices, coupled with the fact that Price had specified in his order the prices and styles, we do not think this attempted explanation sufficient to change the character of a positive sale, as evidenced by the papers. The mantels were duly received by the purchasers, and on March 29th, which was within the two years prior to the application, Price called on the purchasers, made a slight reduction in the bill, was paid for the mantels, receipted the bill, and was afterwards allowed by Anderson 10 per cent. commission for the sale. The written evidence, made at the time, clearly shows a sale of the mantels, executed and completed as early as March 15th. After the lapse of four years this evidence is more satisfactory and conclusive than uncertain verbal testimony, which would turn it into a mere display of samples. In Price's order book no mention is made of any such arrangement. The order is positive. The prices and styles are designated. That Anderson accepted it as such is evidenced by his bill. Indeed, in a letter written the day before, March 14th, to Heckert & McCain, another customer, he says:

"Will ship mantels to-morrow. I am hurrying all I can to get a stock of mantels up, but they are called for as fast as I can get them made. I have orders from Allegheny, Glenfield, Hazenwood, Washington, Pa., Johnstown, Wilkinsburgh, East Liberty, and Pittsburgh. Expect to load a car with mantels and moldings to-morrow."

Under all the facts, we are of opinion a sale was intended by the parties, and was consummated as early as March 15th, which was more than two years prior to the application. Such being the case, the mere fact the price was not paid until March 29th makes it none the less what the parties intended,—a sale. Anderson, therefore, was not entitled to apply for a patent more than two years after March 15th. Having done so, his patent was invalid, and the bill must be dismissed at his cost.